UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL SCOTT RITCHIE,

    Plaintiff,

v.                                        Case No. 1:11-cv-855
                                            Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                      /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on June 11, 1966 (AR 129).[1] He has a bachelor's degree in sociology and philosophy (AR 156), and has had previous employment as a substitute teacher, a corrections officer and a consultant to an auto supplier (AR 165).

Plaintiff alleged a disability onset date of January 31, 2004 (AR 129). Plaintiff identified his disabling conditions as: paraplegia; spinal cord injury; post traumatic stress disorder (PTSD); mismanagement of PTSD creating an anxiety disorder; and paralysis of the bowels and bladder (AR 164). Due to these conditions, plaintiff asserted that he cannot fulfill his obligations to an employer; he cannot perform physical work due to his back problems and he cannot perform desk work due to his PTSD (AR 164). Plaintiff traces his disabling conditions to a serious back injury

---

[1] Citations to the administrative record will be referenced as (AR "page #").

which he suffered while in the army on August 2, 1986 (AR 265). Plaintiff was mountain climbing when he fell approximately 25 feet (AR 265). On June 22, 2010, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 11-26). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of January 31, 2004 through his last insured date of December 31, 2009 (AR 13). At step two, the ALJ found that through the date last insured, plaintiff suffered from the severe impairments of: fracture of lumbar spine; tear of right knee; bowel and bladder incontinence; depression; and anxiety (AR 13). At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically 1.02 (major dysfunction of a joint(s) (due to any cause)), Listing 1.04 (disorders of the spine), 5.01 (the category of digestive system impairments), 12.04 (affective disorders) and 12.08 (personality disorders) (AR 14).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC) to perform light work exertionally as defined in 20 CFR 404.1567(b) with the following limitations:

> The claimant can lift 20 pounds occasionally and 10 pounds frequently. He can stand or walk for two hours and sit for six hours. He can occasionally climb ramps and stairs. He can never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch or crawl. The claimant should avoid concentrated exposure to extreme cold, heat and humidity. The claimant retains the mental capacity to perform simple, routine or repetitive tasks on a sustained basis. He can pay attention for an extended period of time and adapt to simple routine changes in his environment. He can have occasional interaction with supervisors, co-workers and the general public. He should avoid fast production type work.

(AR 15). The ALJ further found that plaintiff could not perform any of his past relevant work (AR 24).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 25-26).  Specifically, plaintiff could perform 12,125 light jobs in the regional economy (defined as the lower peninsula of the state of Michigan) such as ticket taker (4,405 jobs), weigher (775 jobs) and agricultural worker (6,945 jobs) (AR 25). In additional, plaintiff could perform 4,210 sedentary jobs in the regional economy such as surveillance system monitor (400 jobs), assembler (bench) (1,735), and packager (2,075 jobs) (AR 26). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 31, 2004 (the alleged disability onset date) through December 31, 2009 (the last insured date) (AR 26).

### III. ANALYSIS

Plaintiff has raised four issues on appeal.

**A.  The spinal disorder and PTSD of the plaintiff meets or equals the listings and benefits should be awarded.**

**1.  Listing 1.04B**

Plaintiff contends that he meets the requirements of Listing 1.04B.  A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of*

5

*Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

To qualify as disabled under Listing 1.04B, plaintiff must establish the following elements:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . .
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04 B.

While plaintiff asserts that he qualifies under Listing 1.04B, he does not set forth the requirements of the listing and how he meets those requirements. Rather, plaintiff lists a number of diagnostic codes purportedly used by the Veterans Administration when it found plaintiff 100% disabled on April 7, 1987 (approximately 17 years prior to plaintiff's alleged disability onset date). The ALJ determined that plaintiff did not meet the requirements of Listing 1.04 because his back impairment did not result in the compromise of a nerve root or nerve compression and did not result

in the inability to ambulate effectively (AR 14). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A (evidence of nerve root compression), Listing 1.04B (spinal arachnoiditis) and 1.04C (lumbar spinal stenosis resulting in the inability to ambulate effectively). While plaintiff suffered serious injuries in 1986, he has not shown that he suffered from spinal arachnoiditis as defined in Listing 1.04B during the relevant time period (i.e., between January 31, 2004 and December 31, 2009).

Furthermore, plaintiff contends that his condition is "medically equivalent" to spinal arachnoiditis. Plaintiff's Brief at p. 11. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis in original). A social security claimant cannot qualify for benefits under the equivalence step by merely "showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* An impairment will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in the medical evidence are at least equal in severity and duration to a listed impairment. *See Land v. Secretary of Health and Human Servs.*, 814 F.2d 241, 245 (6th Cir.1986) (per curiam). Generally, the opinion of a medical expert is required before a determination of medical equivalence is made. *Retka v. Commissioner of Social Sec.*, No. 94-2013, 1995 WL 697215 at *2 (6th Cir., Nov 22, 1995) citing 20 C.F.R. § 416.926(b). If the evidence fails to demonstrate the required severity as to even one of the criteria, it would be fatal to plaintiff's claim. *See Hale*, 816 F.2d at 1083; *King*, 742 F.2d at 973. "Even in cases where the claimant has had an impairment which came very close to meeting a listing, this court has refused to disturb the Secretary's finding on medical equivalence." *Retka*, 1995 WL 697215 at *2, *citing Dorton v.*

*Heckler*, 789 F.2d 363, 366 (6th Cir.1986) (per curiam); *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir.1985) (per curiam). Plaintiff has not presented a medical opinion to establish that his conditions are medically equivalent to Listing 1.04B, nor does he address the criteria which are relevant to this medical equivalence. Accordingly, plaintiff's claim that he is disabled under Listing 1.04B should be denied.

### 2. PTSD

The ALJ found that plaintiff suffered from a severe impairment of PTSD as noted by a consultative examination (AR 13, 18-19, 639-41). However, the ALJ determined that plaintiff's condition did not meet the requirements of Listings 12.04 (affective disorders) or 12.08 (personality disorders) (AR 14-15). While plaintiff contends that he "meets the criteria" for PTSD and major depression, he does not explain how he meets the criteria for the relevant listings. Plaintiff's Brief at p. 12. Plaintiff is essentially asking this court to perform a de novo review and determine that his PTSD and major depression meet or are medically equivalent to a listed impairment. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard*, 889 F.2d at 681. Furthermore, this court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

> **B. The ALJ failed to give adequate weight and consideration to the disability determination of the United States Department of Veterans Affairs which assigned a 100% service connected disability due to spinal injury and residuals in 1987.**

Plaintiff contends that the ALJ erred in discussing his Veterans Administration (VA) disability rating of 100% in a single paragraph of the decision and that the ALJ committed error by interjecting her "personal standard" into the decision making process. Plaintiff's Brief at p. 14. Plaintiff characterizes the ALJ's decision as based upon her "rather irrational belief that a person who qualifies under VA or SSA disability regulations cannot or will not work," as opposed to his [or counsel's] belief that "[m]any disabled individuals choose to work." *Id.* Plaintiff points out that the "[t]he VA encourages our disabled veterans to seek employment and make a positive contribution to society." *Id.* The record reflects that plaintiff was deemed medically unfit for duty on August 4, 1988 (AR 261). He was found to be rated as 100% disabled as of October 13, 1987, based upon the following conditions: loss of bowel sphincter control secondary to back injury (100% from 4/7/87); loss of bladder sphincter control secondary to back injury (60% from 4/7/87); P.O. spinal fusion residual compression fracture of L1 and L2 (20% from 4/7/87); neurologic impairment, left lower extremity secondary to back injury (10% from 4/7/87); and neurologic impairment, right lower extremity secondary to back injury (10% from 4/7/87) (AR 671). These impairments combined to equal a 100% disabled rating (AR 671).

While the court is sympathetic to plaintiff's situation, and cognizant that the VA determined him to be 100% disabled and medically unfit for the military in 1987, the issue before the court is whether plaintiff met the Social Security Act's definition of a disability from January 31, 2004 through December 31, 2009. In reaching this determination, it is undisputed that plaintiff worked for several years after the VA's disability determination.

The ALJ was not bound to accept the disability rating made by the VA. The regulations at 20 C.F.R. § 404.1504 provide in pertinent part that:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

While a VA disability rating is not binding on the ALJ, it is entitled to some weight. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("[a] VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ"); *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984) (noting that the record contained a Veterans Administration insurance disability award marked "total disability").

Here, the ALJ addressed the VA's disability decision as follows:

> In reaching my conclusion, I have considered the reports and opinions from treating and consulting medical sources and the opinions of the state agency consultants. As noted in claimant's brief, the VA determined the claimant was medically unfit for active duty in 1988 and rated him as 100% disabled from April 1987 (Exhibits 2F/l, 29F). These decisions do not indicate that the claimant cannot work and I am not bound by their decision; but I did consider them. The orthopedic examination that the VA relied on is inconsistent with a finding of inability to work. The claimant had a normal gait. He could squat completely. His toe to heel gait was intact. There was no sensory loss in his feet. His straight leg raising test was negative to 80 degrees bilaterally. His quadricep tone was normal bilaterally (Exhibit 2F). Additionally, the medical evidence and reported activities of the claimant support that the claimant can work as indicated earlier in this decision.

(AR 22).

The record reflects that the ALJ gave consideration to the VA's disability determination. While the VA found that plaintiff was 100% disabled under its regulations in 1987, the record reflects that plaintiff clearly had the ability to work for many years after that date. In

particular, plaintiff held the position of a corrections officer at the Michigan Department of Corrections from 1997 through 2004, a job which the vocational expert (VE) determined was a medium exertional, semi-skilled position (AR 24, 62). Plaintiff's ability to be engaged in substantial gainful employment for years after 1987 mandate a finding that he was not disabled during that time period. "If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience." 20 C.F.R. § 404.1520(b). *See, e.g., Corson v. Bowen*, No. 86-3124, 1987 WL 35994 at *8 fn. 2 (6th Cir. April 3, 1987) ("[p]ursuant to 20 C.F.R. § 404.1520(b), if a claimant is engaged in substantial gainful employment he will be found not disabled regardless of his medical condition or his age, education and work experience"). Accordingly, the ALJ did not err in not adopting the VA's 1987 disability determination with respect to plaintiff's present claim for DIB which arose some 17 years later.

### C. The ALJ's assertion that plaintiff's testimony as to pain and the functional limitations were not credible is not supported by substantial evidence.

Plaintiff contends that the ALJ failed to properly evaluate his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent

11

years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff contends that the ALJ's credibility determination was distorted and deficient. With respect to the alleged mental disability, plaintiff disagrees with the ALJ's determination that he had no restrictions in activities of daily living and that he had only mild difficulties in social functioning, pointing out that he was hospitalized in March 2009 due to suicide concerns, depression and PTSD. Plaintiff's Brief at pp. 19-20. Plaintiff disputes the ALJ's claim that he fishes for four to six hours daily, pointing out that his bowel problems interfere with fishing, that practicing volleyball with his daughters is now difficult and that he has ceased playing basketball. *Id.*[2] In reviewing this issue, the court notes that the ALJ provided an extensive discussion regarding plaintiff's disabling conditions and credibility since his alleged disability onset date of January 31, 2004. Rather than paraphrase the ALJ's decision, the court will quote pertinent portions of the decision:

> The claimant indicated that he stopped work in January 2004 due to his inability to mentally handle the work. He reported that his parapoliga [sic] /spinal cord injury and his paralysis of the bowels and bladder made it difficult to

---

[2] While plaintiff disputes the ALJ's finding that he can fish 4 to 6 hours a day, plaintiff's position is disingenuous. The ALJ's finding is supported by plaintiff's own function report from February 20, 2008, in which plaintiff lists his hobbies as follows: watch TV 8 to 10 hours per day; *fish/hunt 4 to 6 hours per day*; play basketball 3 to 5 hours per week; and use computer 10 hours per week (AR 201) (emphasis added).

12

physical work and deskjobs (Exhibit 2E). He underwent spinal rehabilitation to help with his bulging disc (Exhibit 7E). He reported that he could currently lift 80 pounds individually and 30 pounds repetitively. He could carry less than 80 pounds over 50 yards. He indicated that he can stand and walk less than three hours. When sitting, he needs to change positions after two hours. He can climb five flights of stairs. He has a urethral catheter which is used to empty his bladder four or more times daily. He takes Flexeril which makes him sleepy with the feeling of reduced coordination. His Miralax use increases the urgency and frequency of his bowel movements. His treatment includes ongoing psychological counseling, digital stimulation for bowel movements and changing of positions. He can drive and occasionally can drive 200+ miles for a vacation. He can take care of his personal hygiene, wash dishes, mow lawn with tractor, shop and fold clothes. He reported that he watches television, 8 to 10 hours daily, and fishes, four to six hours daily. He plays basketball three to five hours weekly and uses the computer 10 hours per week. He participates in recreational and leisure activities for his social enjoyment but he has curtailed his participation due to diminished relationships with the participants (Exhibit 4E). He has depression, anxiety and PTSD which he takes Desyrel, Lexapro and Klonopin (Exhibit 9E).

His wife, Nisha Ritchie, completed a third party function report. She indicated that the claimant watches television, spends time on the computer and prepares meals daily. He plays basketball two to three times weekly. She reported that he has trouble standing or walking for long periods of time and using the toilet without the use of medical supplies. Mrs. Ritchie indicated that her husband uses the dishwasher, does laundry, mows the lawn and shovels the snow with a tractor. She indicated that he reads, watches television, plays on the computer and hunts for enjoyment. He goes to the community recreational center two to three times per week. Mrs. Ritchie reported that he can lift up to 60 pounds without problems. He can walk for 1/2 to 1 mile before needing to rest. She indicated that he does not need reminders and can follow instructions very well. He can handle changes in routine with very little problem and remains calm when presented with a stressful situation (Exhibit 3E).

The claimant testified that he was a college graduate and lived with his wife and two daughters. He worked as a substitute teacher in 1995 and a prison guard from 1997 until 2004. He stated that he left his work as a prison guard in 2004 due to work related stress, depression and back pain. He testified that he sees Dr. Joseph Gluski for his mental health prescriptions and visits with Lynn Vangeison Culver weekly for psychiatric counseling. He stated that he was compliant with his medications. He takes Lexapro, Klonodin and Desyrel. He takes Desyrel rather than Ambien for sleep. His medications make him drowsy and affect his balance. He stated that he cannot work due to his incontinence, back, knee and ankle pain, decreased nerve sensation, depression, lack of trusting people and PTSD. He testified that he has bowel accidents twice weekly but can manage his incontinence

if bathroom facilities are available. He takes Miralax to help with his bowels. He uses a catheter at least four times daily. He stated that he can walk two to three miles, and sit or stand for two to three hours. He can lift 50 pounds. On a typical day he will watch a lot of television, read and play on the computer for two to five hours. He enjoys hunting, fishing and playing basketball. He can hunt or fish for three hours. He stated that he is currently more sedentary due to his knee discomfort. He stopped playing basketball around 18 months ago. He has a hard time trusting people but he does have two close male friends that he sees socially. He does volunteer work with the Interfaith Network which involves transporting homeless families to temporary living quarters on an as needed basis.

* * *

The claimant has a history of severe spinal cord injury with problems with a paralyzed bladder. He uses catheters four times daily. However, the claimant had this condition for over 20 years and was able to work. He indicated that if he has private bathroom facilities available he could manage his incontinence. In order to help control his incontinence he uses the bathroom before going anywhere. In June 2007 he was having some trouble passing the intermittent catheter so he had a flexible cystocsopy (Exhibit 13F). It appears that this procedure worked since there was limited treatment or complaints after the surgery. In December 2007 he had plastic catheters ordered to help ease the passing of the catheter. As indicated above, there were few complaints regarding this condition in the treating notes. It was mostly listed as part of his medical history. There were a few complaints with Dr. Kallus regarding constipation. He takes Miralax to help with his constipation. The claimant sought treatment in June 2008 for scrotum tenderness with his urologist, Dr. Kevin Brewton (Exhibit 32F/18). He was diagnosed with an acute onset episode of epididymitis which resolved. In July 2009, Dr. Brewton noted that he was doing well on intermittent catherization (Exhibit 32F/15). In January 2010 he started having problems with erectile function and pain with his left epididymitis. He had left sided epididymectomy which the claimant noted immediate improvement after the surgery (Exhibit 32F/8). During his post surgical appointments the claimant was doing well with no significant pain (Exhibit 32F/5). As indicated, the claimant would have to take certain steps to deal with his bladder impairment, such as going to the bathroom prior to leaving and having his catheters available for use, but his bladder condition would not prevent him from working.

As noted earlier, the claimant has some pain complaints with his back, knees, and feet. However, the medical evidence does not indicate that the claimant took pain medications on a consistent basis. He had intermittent periods of pain which required medication management. However, no pain medications were taken consistently and on an ongoing basis which suggests his pain was not so severe and limiting. He sought treatment in 2004 for his left foot. However, there was no ongoing treatment and complaints in the record that this condition was ongoing and

problematic for the claimant. The claimant had bilateral ACL surgeries with good results. After each surgery, the claimant was reported as stable. The claimant went for EMG testing which showed some abnormal results in 2005 to his back and lower extremities (Exhibit 4F/12). The recommendation was to treat with medical management and not surgery. Over the years, he had many doctor visits with Dr. Kallus and he never mentioned any consistent pain with his knees, feet or back (Exhibit Exhibits 7F, 10F, 23F).

The claimant indicated in his brief that he has been unable to play basketball since March 2009 (Exhibit liB). He sought treatment from an orthopedic surgeon in February 2009 but it was recommended that he continue with non surgical remedies and medical management to help with pain. The claimant indicated that the physical therapy was helping with his back pain and he had some injections to help with the pain and chiropractic care (Exhibits 34F/16, 38F/1O). In September 2009, he indicated that his pain had also improved with the re-introduction of Neurotin to his medication management (Exhibit 37F/83). It appears that his pain is under better control with medication.

Since his alleged onset of disability, the claimant continued to play basketball which would expose his feet, knees, and back to a lot of pounding and pressure which would suggest that the problem was not limiting, severe or interfering with his ability to function. In October 2007 it was noted that he played basketball five days last week (Exhibit 1OF/3). In April 2008 it was noted in the treating notes that the claimant was planting trees and was currently not on any medications (Exhibit 33F/6). In September 2008 he was playing basketball, working out at the gym and recently ran 3/4 of a mile on the treadmill (Exhibit 34F/7). In October 2008 it was noted that he went hunting and worked out yesterday. He had discomfort in his back that started after these activities (Exhibit 34F/15). The ability to engage in these activities supports the residual functional capacity assessed.

The medical evidence supports that he has some physical impairments that would affect his ability to work. However, his extensive activities of daily living, which include mowing the lawn, sweeping the floors, doing dishes and laundry and playing sports, does not suggest a greater restriction than set forth in the residual functional capacity.

I find the claimant's allegations are not fully credible. Although I find that the claimant is credible as to the existence of his impairments, I do not find credible his allegations regarding the severity and persistence of his symptoms as well as the functional limitations that they allegedly cause. I give some weight to the claimant and his wife's reported activities. They list numerous activities that are consistent with his ability to work. However, I do not find credible their statements that the claimant cannot work. This opinion of inability to work is inconsistent with the

>extensive activities, favorable response to treatment and minimal medication management.

(AR 16-17, 20-22).

The ALJ has articulated her reasons for determining that plaintiff was not credible and cited extensive portions of the administrative record to support her determination. While plaintiff may not agree with the ALJ's determination, he has not identified a "compelling reason" for this court to disturb that determination. *See Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim that the ALJ erred in finding his testimony not credible should be denied.

> **D.** **The ALJ failed to provide adequate reasons and bases for her failure to afford controlling weight to both the plaintiff's examining consulting psychologist's report and those of his treating physicians in accordance with 20 C.F.R. § 404.1527.**

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence. Plaintiff's Brief at pp. 22-24.

> **1.** **Elaine Tripi, Ph.D.**

Dr. Tripi was a psychologist who examined plaintiff at his counsel's request on February 28, 2009 (AR 638-46). Plaintiff contends that the ALJ dismissed the doctor's mental evaluation of plaintiff "out of hand." Plaintiff's Brief at p. 22. Plaintiff contends that the ALJ erred by violating 20 C.F.R. § 404.1527 ("Evaluating opinion evidence"), due to "her failure to afford controlling weight" to both an examining psychologist and a treating physician. *Id.* Plaintiff's contention that the ALJ failed to give Dr. Tripi's opinion controlling weight is without merit. Non-treating physicians are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. § 404.1527(c). *See Coldiron v. Commissioner of Social Security*, 391

Fed. Appx. 435, 442 (6th Cir. 2010), citing *Atterberry v. Secretary of Health & Human Services*, 871 F.2d 567, 572 (6th Cir. 1989). In addition, while the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). The regulations address the evaluation of medical opinions in 20 C.F.R. § 404.1527(c), which provides that

> Regardless of the source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source that has not examined you.
>
> \*      \*      \*
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527(c)(1), (4)-(6).

Dr. Tripi diagnosed plaintiff with PTSD, chronic, delayed and severe (AR 640). When rating plaintiff's ability to perform work-related activities (using a four tier system of Excellent - Good - Fair- Poor), the doctor concluded that plaintiff was "good" in only one activity (adhere to basic standards of neatness and cleanliness), "fair"in twelve activities and "poor" in nine activities (AR 643-44). She also concluded that his impairment affected plaintiff's ability to understand, remember and carry out instructions (AR 643). Dr. Tripi offered the following conclusion regarding plaintiff's condition:

> Randall S. Ritchie is a 42-year-old Army veteran who is currently 100 percent permanent and total based on physical problems related to a fall on August 2, 1986. Oaklawn Counseling is currently treating him for Post Traumatic Stress Disorder. Based on my clinical interview, observations, and review of records, it is my professional opinion that he meets all criteria as outlined by DSM-IV regarding 309.81 [Post Traumatic Stress Disorder]. Based on his age, education, training, work history, and current level of symptoms, both physical and emotional, it is my professional opinion that he is not a viable rehabilitation candidate, or is he employable. He has severe pain in his back and has difficulty sustaining activities for more than 30 minutes at a time. It is necessary for him to rest intermittently throughout the day.

(AR 641).

Contrary to plaintiff's contention, the ALJ did not dismiss Dr. Tripi's report "out of hand." Rather, the ALJ set forth the following reasons for giving the opinion limited weight:

> I give little weight to the psychosocial evaluation that the claimant underwent in March 2009. The mental health examiner opined that the claimant was not a viable rehabilitation candidate and he was not employable (Exhibit 25F). She specifically noted that he has severe pain in the back and difficulty sustaining activities for more than 30 minutes at a time. He has to rest intermittently throughout the day. These comments are severely undermined by the claimant's extensive activities that he engaged in and medical treatment. The ability to play basketball, hunt and perform yard work and house work are inconsistent with this opinion. Her indication of poor ability to follow instructions is contrary to what the claimant's wife indicated. Mrs. Ritchie indicated that her husband could follow instructions very well (Exhibit 3E/10). The mental health examiner's indication that he cannot complete a normal work day was inconsistent with the claimant's activities and

>   favorable mental status examinations. The mental health examiners [sic]concerns over his ability to deal with people were addressed in the residual functional capacity. The claimant does have some ability to work with people as demonstrated by his volunteer work and his past work history.

(AR 24).

The record reflects that the ALJ adequately considered Dr. Tripi's opinion. To the extent that plaintiff contends that the ALJ improperly relied on the consultative examination performed by Carol Lehman, M.A., L.L.P, and Neal Davidson, Ph. D. , L.P., of the Michigan Disability Determination Service (DDS) in March 2008 (AR 555-60), such arguments are not supported by the record. While the ALJ mentioned the DDS examination in reviewing plaintiff's medical history (AR 18), she did not rely on this examination to the exclusion of other evidence. Accordingly, plaintiff's claim of error with respect to the ALJ's evaluation of Dr. Tripi's opinion should be denied.

### 2. The "physicians at Oaklawn" and Dr. McClain, D.P.M.

Plaintiff makes fleeting references to opinions expressed by "the physicians at Oaklawn" whom he refers to as examining sources, and the records of James McClain, D.P.M. Plaintiff's Brief at pp. 23-24. However, plaintiff has not explained the findings of these medical sources in any detail or how the ALJ committed error with respect to her evaluation of them.[3] "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson*, 125 F.3d at 995-96. Accordingly, the court deems the arguments related to the "physicians at Oaklawn" and Dr. McClain waived.

---

[3] In this regard, the cited record of Dr. McClain from December 8, 2004 (AR 296) tends to undermine plaintiff's claim. At that time, the doctor noted that plaintiff's occupation status was "unemployed," but listed his "job demands" as "Enjoys hunting and taking care of his children" (AR 296).

19

### IV.     Recommendation

Accordingly, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  June 15, 2012                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).